The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Nicholas VALENCIA, Defendant–
Appellant.

No. 08CA0456.

Colorado Court of Appeals,
Div. V.

March 31, 2011.

Rehearing Denied June 2, 2011.

John W. Suthers, Attorney General, Alice Q. Hosley, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Cory D. Riddle, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CRISWELL.*

Defendant, Nicholas Valencia, appeals the judgment of conviction entered on jury verdicts finding him guilty of sexual assault, first and second degree assault (merged), first degree burglary, and false imprisonment. Defendant also appeals his designation as a sexually violent predator. We reverse the judgment and remand for a new trial.

## I.   Background

Defendant was the ex-boyfriend of the victim, E.S. While E.S. was out drinking with friends, defendant entered her house without permission and hid in her bedroom closet.

E.S. testified that, when she returned home in the early morning hours, defendant burst from the closet and attacked her. He punched her and slashed at her with a knife, making a large cut to her brow and cutting her upper lip. He also cut her chin and neck

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2010.

and stuck the knife down her throat. During the struggle, she grabbed at the knife and cut her hands. Defendant then grabbed her by the hair and pulled her into the shower where she lost consciousness. When she awoke mid-morning, defendant forced her to have sex with him. He then cleaned portions of the house and fled when E.S. promised not to call police and gave him a check for $150.

Police responded to the scene and E.S. identified defendant as her attacker. She was then transported to the hospital where medical staff treated her wounds and collected samples for a rape kit.

Later that evening, officers arrested defendant without a warrant as he waited outside E.S.'s sister's house. While he was in custody, and again acting without a warrant, officers swabbed a small speck of blood in his ear that they had noticed, and at a later date, they also obtained buccal swabs from him. These items, together with the victim's rape kit, were forwarded to the Colorado Bureau of Investigations (C.B.I.), where they were purportedly subjected to DNA and serological testing.

## II. The Expert's Testimony

At the trial, the prosecution presented evidence that the blood swab taken from defendant's ear, as well as his buccal swabs, together with the rape kit containing specimens from the victim, were suitably packaged, marked for identification, and delivered to the C.B.I.

The prosecution then called an expert witness who testified that the blood on defendant's ear was that of the victim and that defendant's sperm was found in the victim's vagina. This testimony was based upon the expert's examination of certain items, which she had received from an "analyst" at the C.B.I. However, she did not describe either the items themselves or the packaging in which they were contained. Rather, without describing her source of knowledge, she said that one item "was a swab taken from the suspect's left ear," and that the rape kit that she examined "was listed as having come from the victim."

The items examined by this expert were not introduced as evidence, and defendant objected to the witness's testimony on the grounds, among others, that there had not been a sufficient foundation laid to receive that testimony. And, before us, he argues that the trial court abused its discretion by allowing the witness to testify, absent a proper identification of the items she examined. We agree.

It is the general rule that no witness may testify upon a subject "unless evidence is introduced sufficient to support a finding that he [or she] has personal knowledge of the matter." CRE 602; *see also Pomeranz v. McDonald's Corp.*, 843 P.2d 1378, 1383 (Colo. 1993) (without providing some evidentiary basis for his knowledge, lay witness may not provide an estimate of future maintenance costs).

This general rule is, of course, "subject to the provisions of Rule 703, relating to opinion testimony by expert witnesses." CRE 602.

CRE 703 provides that "[t]he facts or data . . . upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing." And, if those facts or data are of the type reasonably relied upon by experts in the field, they need not be admissible as evidence. Under this rule, then, there are three methods whereby an expert may acquire knowledge of facts upon which to base an opinion. Such knowledge may be acquired through the expert's first-hand observation, through facts presented at trial (either by means of a hypothetical question or through other evidence received at the hearing), or through facts that are outside the record that, although not personally observed by the expert, are of a type reasonably relied on by experts in the same field. *Gold Rush Investments, Inc. v. G.E. Johnson Constr. Co.*, 807 P.2d 1169, 1173 (Colo.App.1990).

Here, the "facts and data" relied upon by the expert were those that were personally perceived by her. She personally performed tests upon a blood sample, a buccal swab, and certain items in a rape kit, and she personally perceived the results of those tests.

At the same time, however, it is clear that this witness had no personal knowledge of the *origin* of *any* of the objects tested by her. Yet, the results of the tests performed would be relevant only if the items tested were in some manner connected to defendant, the victim, or the crime. CRE 401 (relevancy); *Washington v. People,* 158 Colo. 115, 123, 405 P.2d 735, 738 (1965); *People in Interest of R.G.,* 630 P.2d 89, 92 (Colo.App. 1981).

Here, because the expert lacked the requisite personal knowledge as to the origin of the items examined, it was necessary that the identity of those items be established by other means. Had the items themselves been introduced, it would have been a simple matter for the expert to identify them as those upon which she had conducted her testing.

However, we reject defendant's assertion that, because the items themselves were not placed in evidence, the expert could not testify about them. There is no necessity for the introduction of an object in order to establish the identity of that object; such identity may be established by other evidence. *See, e.g., People in Interest of J.G.,* 97 P.3d 300, 303 (Colo.App.2004).

We do agree, however, that before expert testimony as to the results of the testing of an object may be received, some proof must be presented of a connection between the object tested and the defendant, the victim, or the crime. Otherwise, the testimony would have no relevancy. The object must be identified.

CRE 901(a) requires that an object must be identified as a condition precedent to its admissibility. And it is also necessary to identify an item that has been examined as one bearing the relevant connection. Normally, to establish that connection, it is necessary to present evidence showing a complete chain of custody of the item. *People v. Sutherland,* 683 P.2d 1192, 1197 (Colo.1984) ("The chain of custody of any blood sample must be established, and failure to do so may be excused only where circumstances provide reasonable assurances of identity and unchanged condition of the sample.").

Whether there is a complete chain of custody is a matter to be resolved by the trial court prior to admitting the evidence. *People v. Atencio,* 193 Colo. 184, 187, 565 P.2d 921, 924 (1977). "Even where there is some confusion about the chain of custody, so long as the evidence was accounted for at all times, the evidence is admissible." *Id.* at 187, 565 P.2d at 923. Speculation of tampering is insufficient to establish a break in the chain of custody, *People v. LeMasters,* 666 P.2d 573, 577 (Colo.App.1983), *aff'd,* 678 P.2d 538 (Colo.1984), and, absent any evidence of tampering or lack of authentication, the proponent of the evidence is not required to call each witness who may have handled the item. *Sutherland,* 683 P.2d at 1197.

If the trial court determines a complete chain of custody exists, any imperfections in the chain go to the weight to be given to the evidence, rather than to its admissibility. *People v. Grace,* 55 P.3d 165, 172 (Colo.App.2001).

Of course, it may well not be necessary in every case to establish a chain of custody to identify the object tested by the expert. If, for example, the expert describes an object as having the identifying marks placed on the item or its packaging by an investigator, and there is no evidence of any interim tampering, such identification may well be sufficient to justify its admission. *See Sutherland,* 683 P.2d at 1197. Nonetheless, while CRE 901(a) and the prior decisions respecting the identification of objects specifically apply only if the object is offered as evidence, we conclude that these same considerations must be applied if a proper identification of an object is required for other purposes, even if the object itself is not offered.

Here, then, because the items tested by the expert were not introduced, and because the expert did not describe how the items she tested were marked, there was no proper evidence establishing that the tested items came from either defendant or the victim, save for the expert's unexplained conclusory statements. Under these circumstances, we are forced to conclude that the trial court abused its discretion by allowing the expert's testimony respecting the results of her tests.

Nor was the admission of this evidence mere harmless error. Aside from this expert's testimony, the only evidence connecting defendant with these violent assaults was the victim's testimony. However, as we describe below, she testified that she was unclear about certain incidents about which she testified, and we cannot conclude that the expert's testimony did not substantially influence the jury's verdict. *People v. Gaffney*, 769 P.2d 1081, 1088 (Colo.1989). Therefore, we must reverse defendant's convictions and remand the case to the trial court for a new trial.

### III. Defendant's Other Contentions

Certain of defendant's other assertions raise issues that may arise again on retrial, and so we address them here. *See, e.g., Kaufman v. People*, 202 P.3d 542, 552 (Colo. 2009) (reversing and remanding conviction due to instructional error, but nonetheless addressing admissibility of other acts evidence because it could arise on remand).

### A. Sexually Violent Predator Designation

■ Defendant asserts the trial court erred in designating him a sexually violent predator. Again, we agree.

■ The designation of an offender as a sexually violent predator (SVP) is a mixed question of law and fact. *People v. Cook*, 197 P.3d 269, 280 (Colo.App.2008). In reviewing such a designation, we defer to the trial court's factual findings, if supported, but consider de novo whether those findings are sufficient to support its conclusions of law. *People v. Tixier*, 207 P.3d 844, 849 (Colo.App. 2008).

To be designated a SVP, an offender (1) must be over eighteen years of age when the offense is committed; (2) must be convicted of one of an enumerated class of sexual offenses, which, for purposes of this case, includes sexual assault; (3) must have perpetrated the offense upon a victim who was a stranger to the offender or one with whom the offender established or promoted a relationship primarily for the purpose of sexual victimization; and (4) based upon a risk assessment screening, must be likely to commit a similar sexual offense. § 18–3–414.5(1)(a), C.R.S.2010 (SVP statute). Based on the results of the risk assessment, "the court shall make specific findings of fact and enter an order concerning whether the defendant is a sexually violent predator." § 18–3–414.5(2), C.R.S.2010.

■ The SVP statute is protective rather than punitive. *People v. Tuffo*, 209 P.3d 1226, 1231 (Colo.App.2009). Accordingly, facts supporting a trial court's ruling need not be proven to a jury beyond a reasonable doubt. *Id.* Instead, as in all sentencing matters, a court may consider any reliable evidence and is bound only by due process. *Id.* "Proof by a preponderance of the evidence of facts relied upon in sentencing determinations generally satisfies due process considerations." *People v. Brosh*, 251 P.3d 456, 461 (Colo.App.2010).

Regarding the SVP statute's third element, the risk assessment here concluded that the victim was not a stranger to defendant and defendant did not "establish" a relationship with her for the primary purpose of sexual victimization. However, the assessment did find that defendant "promoted" such a relationship.

An offender promotes a relationship when he encourages, but fails to establish, a relationship with the victim. *Tixier*, 207 P.3d at 847–48. An offender can likewise promote a proscribed relationship when he and the victim have had a previous relationship, which was limited in its nature, purpose, and customary time and place of interaction, but the offender encouraged the expansion of that relationship to foster sexual victimization. *Id.* at 848.

Here, the risk assessment found that defendant promoted a relationship primarily for the purpose of sexual victimization because he "took steps to change the focus of the relationship to facilitate the commission of a sexual assault such as but not limited to planning, increased frequency of contact, introduction of inappropriate sexual contact, stalking, seduction or drugging of the victim."

However, there is nothing in this record that supports that conclusion. There was no

evidence that defendant stalked, seduced, or drugged the victim. Moreover, defendant and the victim were in a consensual sexual relationship two weeks before the assault, and there was no evidence that defendant introduced inappropriate sexual contact during that relationship, or that he thereafter increased his frequency of contact with the victim for the purpose of the later sexual assault.

Rather, while the evidence established that defendant committed a violent sexual assault, there is no evidence that he had previously promoted a relationship with the victim to facilitate that assault. To promote a relationship primarily for the purpose of sexual victimization, an offender must engage in some conduct, beyond the sexual assault itself, which is designed to establish an initial relationship or to expand an existing relationship into one primarily for the purpose of sexual victimization. "Obvious examples would include teachers, coaches, or clergy who have a limited relationship with a victim and attempt to lure the victim into a broader relationship primarily for the purpose of sexual victimization." *Tixier,* 207 P.3d at 848. These circumstances are not present here, and the trial court erred in concluding that defendant satisfied the SVP statute's third element and, thus, in designating him a sexually violent predator.

### B. Motion to Suppress

■■■ Defendant contends that any DNA evidence resulting from the swab of his ear should have been suppressed as the fruit of an illegal search. We disagree.

■■■ In ruling on motions to suppress, we defer to the district court's findings of fact if they are supported by competent evidence in the record. *People v. Platt,* 81 P.3d 1060, 1065 (Colo.2004). But "whether the trial court applied the correct legal standard to the facts established by the record is a mixed question of fact and law we review de novo." *Id.*

■■■ In Colorado, a peace officer may make a warrantless arrest if he or she has probable cause to believe that an offense has been committed and to believe that the offense was committed by the person to be arrested. § 16–3–102(1)(c), C.R.S.2010. Probable cause exists "when there is a fair probability that the defendant has committed, is committing, or is about to commit a crime." *People v. Brown,* 217 P.3d 1252, 1256 (Colo.2009). This determination is a practical consideration discerned from the totality of circumstances known to the arresting officer. *People v. Cappelli,* 927 P.2d 832, 834 (Colo.1996).

■■■ Under the citizen-informant rule, when an identified eyewitness to a crime gives information to police, that information is considered sufficiently reliable to support a probable cause determination. *People v. Donnelly,* 691 P.2d 747, 749 (Colo.1984); *People v. Hubbard,* 184 Colo. 225, 228–29, 519 P.2d 951, 953 (1974). Thus, when a victim gives information to the police, that information is presumed sufficiently reliable to establish probable cause for an arrest. *See People v. Burns,* 200 Colo. 387, 390, 615 P.2d 686, 689 (1980) (probable cause for warrantless arrest where defendant was identified by victim); *People v. Handy,* 657 P.2d 963, 966 (Colo.App.1982) (applying citizen-informant rule to victim's identification of defendant); *People v. Benson,* 544 P.2d 646, 648 (Colo.App.1975) (not published pursuant to C.A.R. 35(f)).

■ Further, if an arrest is valid, so too is a search of the person arrested. *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). "It is the fact of the lawful arrest which establishes the authority to search...." *Id.* at 235, 94 S.Ct. 467. Such a search incident to an arrest constitutes an exception to the warrant requirement of the Fourth Amendment. *Id.*

Thus, the legality of the search of defendant's ear and the seizure of blood evidence therein depends upon whether probable cause existed for his arrest. The record supports the conclusion that such probable cause existed here.

At the suppression hearing, one officer testified that he had spoken to E.S. at the scene and that she had identified defendant as her attacker. She also provided defendant's first and last name, his month and day

of birth, and noted that he was thirty-five years old and was her ex-boyfriend. Hence, under the citizen-informant rule, her identification, without more, provided officers with probable cause to arrest defendant.

However, this officer also recognized her description of defendant because of a prior incident. By searching defendant's name and date of birth within a law enforcement computer database, the officer received additional information, including defendant's photograph. Thereafter, when this officer went to the house of E.S.'s sister and saw defendant, he recognized him and took him into custody.

Based upon this testimony, we conclude that probable cause existed for defendant's arrest, and therefore, the search of his ear and seizure of blood evidence was a valid search incident to that arrest. Accordingly, the trial court properly declined to suppress the resulting DNA evidence because of the alleged illegal arrest of defendant.

### C. Discovery Sanctions

Defendant contends the trial court abused its discretion by not excluding the blood speck DNA evidence as a discovery sanction for the prosecution's attempted late endorsement of a witness. Given our remand of this case for a new trial, this issue has become moot. Defendant will have been given suitable notice of this witness and the expected testimony prior to any new trial.

Likewise, for the same reason, defendant's assertion that the C.B.I. expert testified to an opinion that had not been previously disclosed has also been rendered moot.

### D. Motion to Exclude Testimony

■ Defendant finally asserts that E.S. did not have sufficient personal knowledge to testify, and the trial court erred in concluding otherwise. We disagree.

A trial court's decision on an evidentiary matter, such as the propriety of testimony under CRE 602, is reviewed for an abuse of discretion. *People v. Stewart*, 55 P.3d 107, 122 (Colo.2002). A trial court does not abuse its discretion unless its ruling is manifestly arbitrary, unreasonable, or unfair. *Id.*

As we have noted, a lay witness may not testify unless he or she has personal knowledge of the subject of the tendered testimony. CRE 602. Under CRE 104(b), "[w]hen the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."

In determining whether a witness has sufficient personal knowledge, the Colorado Supreme Court has held that "Rule 602 is 'a specialized application of the provisions of Rule 104(b) on conditional relevancy.'" *Burlington N. R.R. Co. v. Hood*, 802 P.2d 458, 468 (Colo.1990) (quoting Fed.R.Evid. 602 advisory committee's note). Therefore, unless the evidence is manifestly insufficient, whether a witness possesses personal knowledge is for the jury to decide. *Id.* at 468–69.

■ In *Burlington*, the court noted that the threshold for complying with CRE 602 is not very high, may be inferable from sources other than the witness, and is discerned from the totality of circumstances surrounding the subject of the testimony. *Id.*

> Thus, as long as there is evidence before the trial court that the jury, as the trier of fact, could reasonably find that the witness has personal knowledge of the event to which the witness is about to testify, the witness should be permitted to testify, and the questions of credibility and weight should be left for the jury to resolve.

*Id.* at 469. Although *Burlington* was a civil case, its principles have been extended to criminal trials. *People v. Garcia*, 826 P.2d 1259, 1264 (Colo.1992).

We recognize that E.S. did not have a perfect memory of her attack. She had been drinking for an extended period of time, she said she had a hard time remembering details, and she was unsure whether she possessed a real memory of her positioning during the attack. We also recognize that there were discrepancies between what she told police at the scene and what she told medical staff at the hospital.

However, as did the trial court, we interpret *Burlington* to mean that the personal

knowledge requirement of CRE 602 is satisfied if there is any credible basis from which a jury could determine the witness has personal knowledge. Here, the totality of circumstances indicated that E.S. was able to recount most of the events occurring during the attack upon her without equivocation. Therefore, the low threshold of CRE 602 was satisfied, and any inconsistencies were for the jury to resolve when determining her credibility and the weight to be given to her testimony. Hence, the trial court did not abuse its discretion in allowing her to testify.

Defendant also contends that the trial court denied him access to E.S.'s victim compensation records, and that those records may have contained information relevant to his motion to exclude her testimony. The trial court engaged in an in camera review of the records, as have we, and we agree with the trial court's conclusion that they do not contain any relevant information.

The judgment is reversed, and the case is remanded to the district court for a new trial.

Judge GRAHAM and Judge ROMÁN concur.