23CA0640 Peo v Lemuel 04-24-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0640
El Paso County District Court No. 21CR2706
Honorable Monica J. Gomez, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Kevin Kyle Lemuel,

Defendant-Appellant.

ORDER AFFIRMED

Division III
Opinion by JUDGE TOW
Dunn and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 24, 2025

Philip J. Weiser, Attorney General, Jaycey DeHoyos, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Taylor J. Hoy, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1 Defendant, Kevin Kyle Lemuel, appeals the district court's order designating him a sexually violent predator (SVP). We affirm.

## I. Background

¶ 2 After a night of drinking at two bars, N.H. was walking to her car when Lemuel told her that their long-time mutual friend Ladon Wicks had told him to give her a ride. N.H. recognized Lemuel as someone in a "car club" with Wicks, and she got in Lemuel's car. Lemuel drove N.H. to a park, forcibly raped her on the ground outside the car, then drove away. N.H. contacted the police and made her way to a nearby residence, where the police responded.

¶ 3 N.H. did not know her assailant's name. A sexual assault nurse examiner collected swabs from N.H.'s genitals and submitted them for DNA testing. Months later, the police were notified that the DNA collected from N.H. matched the DNA collected from two additional sexual assault victims: one assaulted just a month before N.H., and one assaulted in 2008. The perpetrator of the 2008 sexual assault was Lemuel. N.H. then identified Lemuel from a photo lineup with "100%" certainty.

¶ 4 Lemuel pleaded guilty to one count of sexual assault. The SVP risk assessment screening instrument (SVPASI) showed that

Lemuel met the criteria to be designated an SVP. Sex Offender Management Board evaluator Dennis Baker completed the relevant portion of the SVPASI, indicating that the relationship criterion was satisfied by a "stranger" relationship between Lemuel and N.H. Baker later testified that his opinion was based on information in the probable cause affidavit and Lemuel's own statement that N.H. "was a stranger to him."

¶ 5    The district court, however, noted that Wicks generally testified that N.H. and Lemuel had both been present and had talked at two or more group events of at least ten people, but he had not seen them talking one-on-one. Based on Wicks's testimony that N.H. and Lemuel had previous interactions, the district court found that the evidence did not establish the stranger criterion.

¶ 6    The district court then turned to whether the SVP relationship criteria was otherwise satisfied by Lemuel promoting the relationship with N.H. primarily for the purpose of sexual victimization. The court found that Lemuel had promoted the relationship because he encouraged N.H., with whom he had a limited relationship, to enter into a broader relationship for the

purpose of sexual victimization.  In particular, the court made the following findings:

- Wicks normally "look[ed] out for" N.H. to make sure she didn't drink and drive.

- When N.H. left the bar, Lemuel "pulled up and said something to the effect of, [Wicks] told me to give you a ride since we're going to the same place.  Plus, he doesn't want you to get a DUI, and I'm sober, so you might as well ride with me."

- N.H. asked Lemuel where they were going, and he said, "the after party."

- Because Lemuel was in a car club with Wicks, N.H. believed Lemuel and agreed to go with him.

¶ 7     Ultimately, the court found that Lemuel exploited N.H.'s trust in their mutual friend to lure her into his vehicle, and he manipulated her with a promise of sober transportation based on the pretense that Wicks was concerned for her safety.  The court further found that, with the sole purpose of sexually victimizing N.H., Lemuel acted "with a promise of being her protector, with a promise of being her friend, with the promise of one standing in the

position in place of her longtime trusted friend, [Wicks]." The court thus found that Lemuel had promoted a relationship with N.H. for the sole purpose of sexual victimization. It designated Lemuel an SVP.

## II. Discussion

¶ 8 Lemuel contends that (1) the record does not support the court's finding that he "lured" N.H. into his car; and (2) even assuming that he encouraged N.H. to accept a ride, that conduct does not support the district court's ultimate finding that he promoted a relationship under *People v. Gallegos*, 2013 CO 45, ¶ 14. The People counter that the evidence supports the district court's finding that Lemuel promoted a relationship. We agree with the People.

### A. Applicable Law and Standard of Review

¶ 9 Under the SVP statute, a district court may designate an offender an SVP if the offender (1) was eighteen years of age or older on the date of the offense; (2) was convicted of an enumerated sexual offense (one of which is sexual assault); (3) committed the offense against a victim who was a stranger or was a person with whom the offender established or promoted a relationship primarily

4

for the purpose of sexual victimization; and (4) is likely to recidivate by committing an enumerated sexual offense based on the SVPASI. § 18-3-414.5(1)(a)(I)-(IV), C.R.S. 2024.  Before entering an order designating an offender an SVP, the district court must make specific findings of fact regarding these criteria, particularly if the court deviates from the SVPASI.  *Allen v. People*, 2013 CO 44, ¶ 15; *see also* § 18-3-414.5(2).  Only the third criterion is at issue in this appeal.

¶ 10    "[A]n offender 'promoted a relationship' if, excluding the offender's behavior during the commission of the sexual assault that led to his conviction, he otherwise encouraged a person with whom he had a limited relationship to enter into a broader relationship primarily for the purpose of sexual victimization." *Gallegos*, ¶ 14.  In other words, an offender promotes a relationship "when he and the victim have had a previous relationship, which was limited in its nature, purpose, and customary time and place of interaction, but the offender encouraged the expansion of that relationship to foster sexual victimization." *People v. Valencia*, 257 P.3d 1203, 1207 (Colo. App. 2011) (cited with approval in *Gallegos*, ¶ 15).

¶ 11    A district court's SVP designation presents a mixed question of law and fact.  *Allen*, ¶ 4.  We defer to the court's factual findings when they are supported by the record and review de novo whether those factual findings support an SVP designation.  *Id.*  Absent clear error, we will not disturb the court's findings of fact in an SVP determination.  *People v. Brosh*, 251 P.3d 456, 460 (Colo. App. 2010).

### B.    The Record Supports the District Court's Findings

¶ 12    Lemuel argues that the record does not support the court's finding that he "lured" or "manipulated" N.H. into his car, because the court heard evidence that *N.H. asked him* for a ride.  We disagree.

¶ 13    First, we note that near the beginning of these SVP proceedings, Lemuel conceded that the district court could rely on the facts presented in the probable cause affidavit.  Each of the court's relevant findings, including its finding about the content of the conversation that immediately preceded N.H. entering Lemuel's car, were based on statements reported in that document.  The court's characterization of Lemuel's part in the conversation as "luring" may be readily inferred from his use of multiple rationales

to persuade N.H. to accept a ride: Wicks directed it; Lemuel was sober; they were going to the same after party; and Wicks did not want her to get a DUI. Likewise, the court could infer that Lemuel offered these rationales to manipulate N.H. and for the sole purpose of sexual victimization, given Lemuel's admission that he used force to sexually assault N.H. shortly after they drove away from the bar. We conclude that the record amply supports the court's findings.

¶ 14    It is true that Wicks testified that N.H. had asked Lemuel for a ride. Specifically, he testified to the following facts. Near the end of the evening, N.H. asked Wicks, then Lemuel, and then another man for a ride. Later, when Wicks prepared to leave, he heard Lemuel ask N.H., "How far you gotta go?" but N.H. couldn't remember where she wanted to go. After that, Wicks left.

¶ 15    Based on the sequence of events presented, we cannot conclude that Wicks's testimony necessarily conflicts with the probable cause affidavit or the district court's finding that Lemuel made efforts to lure N.H. into his car. To the extent the testimony conflicts with the affidavit, it is the province of the fact finder, not the appellate court, to resolve conflicting evidence. *See People v. McIntier*, 134 P.3d 467, 471 (Colo. App. 2005) (It is the fact finder's

7

function "to consider and determine what weight should be given to all parts of the evidence and to resolve conflicts, testimonial inconsistencies, and disputes in the evidence.").

¶ 16    Because the district court's factual findings are supported by the record, we will not disturb them. *See Allen*, ¶ 4; *Brosh*, 251 P.3d at 460.

### C.    Lemuel's Conduct Promoted a Relationship

¶ 17    Lemuel argues that the court erred by finding that he promoted a relationship by encouraging N.H. to accept a ride because *Gallegos* explicitly excludes "the offender's behavior during the commission of the sexual assault" from conduct that may promote a relationship. *Gallegos*, ¶ 14. We do not share Lemuel's view of *Gallegos*.

¶ 18    Lemuel asks us to interpret *Gallegos* broadly to exclude a court's consideration of conduct that occurred on the same night as a sexual assault. But *Gallegos* does not require such a broad interpretation. Nor does *People v. Tunis*, 2013 COA 161, ¶¶ 38-41, where a division of this court concluded that the defendant's conduct of (1) asking a third party whether the victim would be alone and (2) breaking into her home in the middle of the night did

8

not establish the SVP criterion "promoted a relationship." There, the division did not rely on the fact that the conduct occurred on the same night as the assault — rather, it concluded that (1) the defendant's planning with a third party did not encourage the victim to enter into a broader relationship; and (2) the "circumstances of the assault" were precluded from consideration under *Gallegos*. *Id.*; *see also Uribe-Sanchez v. People*, 2013 CO 46, ¶ 10 (concluding that breaking into a victim's home, grabbing her, and quickly escalating into a forcible rape does not establish a promoted relationship).

¶ 19    In this case, Lemuel's enticement of N.H. into his car was not merely planning. That conduct also encouraged the promotion of a very limited acquaintanceship — a relationship that occurred only at car club events involving Wicks and did not include names or direct conversation — to a one-on-one relationship in a place where the pair had never previously interacted. *See Gallegos*, ¶ 14; *Valencia*, 257 P.3d at 1207.

¶ 20    Moreover, the relevant conduct did not occur during the commission of the sexual assault. *See Gallegos*, ¶ 14; *Valencia*, 257 P.3d at 1208. To the extent it occurred during "the charged

9

incident," as Lemuel argues, it was separated by time and place from the conduct underlying the sexual assault itself. We conclude that the district court may consider Lemuel's behavior, encouraging N.H. to accept a ride in his car, without running afoul of *Gallegos*.

¶ 21 For these reasons, we conclude that the district court's factual findings support Lemuel's SVP designation.

### III. Disposition

¶ 22 The order is affirmed.

JUDGE DUNN and JUDGE MEIRINK concur.