23CA1757 Peo v Garza 11-26-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1757
Jefferson County District Court No. 22CR1762
Honorable Meegan A. Miloud, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jerry Lee Garza,

Defendant-Appellant.

ORDER AFFIRMED

Division I
Opinion by JUDGE GROVE
J. Jones and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 26, 2025

Philip J. Weiser, Attorney General, Cata A. Cuneo, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Mark Evans, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Jerry Lee Garza, appeals his designation as a sexually violent predator (SVP) under section 18-3-414.5(1)(a), C.R.S. 2025.  We affirm.

## I.     Background

¶ 2     Based on allegations that he sexually assaulted his daughter, S.G., many times over the course of more than two years when she was between the ages of five and six, Garza was charged with one count of sexual assault on a child, position of trust, victim under fifteen, as part of a pattern of abuse and one count of aggravated incest.  As part of a plea agreement, Garza pleaded guilty to one added count of sexual exploitation and one added count of sexual assault on a child, and the remaining charges were dismissed.

¶ 3     The abuse was discovered when Garza's two young children, R.G. and S.G., were staying with him overnight in November 2021. Divorced from the children's mother and living in a small space, Garza slept in the same bed as R.G. and S.G. when he had custody. One night while at Garza's, R.G. — S.G.'s older brother — woke up to use the restroom. After R.G. returned to bed, he said, Garza waited for him to fall back asleep.  Once it seemed R.G. was asleep, Garza sexually penetrated S.G.

¶ 4     R.G. told his mother about the assault the next day.  S.G. confirmed that Garza regularly sexually assaulted her vaginally and orally.  Around the time of the reported incident, the children's mother also noticed red bumps near S.G.'s vagina that S.G. later said were from Garza's "nasty beard."  Garza also admitted to his own siblings that he had sexually assaulted both S.G. and his roommate's young daughter.

¶ 5     After pleading guilty, Garza was sentenced to eight years in the custody of the Department of Corrections, followed by a term of ten years to life on sex offender intensive supervised probation.

¶ 6     At sentencing, S.G.'s mother read statements that she, R.G., and S.G. had prepared.  The prosecution also summarized the evidence against Garza, discussed Garza's past sex offense with a sixteen year old, and detailed past allegations of child sex abuse made against him.  It reported that the sex offense-specific evaluation indicated Garza was a "high risk for both general and sexual reoffense because he is in Level 3 denial."  Garza's SVP assessment also showed he met all the criteria for an SVP designation.

¶ 7    As relevant to this appeal, the district court found that "the evidence presented proves that [Garza] established or promoted a relationship primarily for the purposes of sexual victimization," and that Garza's actions "included preplanning [and] repetition of offending."

## II.    SVP Designation

¶ 8    Garza contends that there was insufficient evidence showing that he "promoted a relationship" with S.G. and therefore the district court's SVP designation was unwarranted. We are not persuaded.

## A.    Applicable Law

¶ 9    A sex offender may be designated as an SVP when the offender (1) was eighteen years of age or older as of the date of the offense; (2) was convicted of an enumerated sexual offense; (3) committed the offense against a victim who was a stranger or was a person with whom the offender established or promoted a relationship primarily for the purpose of sexual victimization; and (4) is likely to recidivate. § 18-3-414.5(1)(a). The burden of proof for the SVP designation is a preponderance of evidence. *Allen v. People*, 2013

CO 44, ¶ 7; *People v. Valencia*, 257 P.3d 1203, 1207 (Colo. App. 2011).

¶ 10    An offender has "promoted a relationship" for purposes of the SVP designation if, excluding the offender's behavior during the commission of the sexual assault that led to his conviction, "he otherwise encouraged a person with whom he had a limited relationship to enter into a broader relationship primarily for the purpose of sexual victimization." *People v. Gallegos*, 2013 CO 45, ¶ 14.  An offender can "promote a proscribed relationship when he and the victim have had a previous relationship, which was limited in its nature, purpose, and customary time and place of interaction, but the offender encouraged the expansion of that relationship to foster sexual victimization." *Valencia*, 257 P.3d at 1207.

B.    Preservation and Standard of Review

¶ 11    In the context of an SVP determination, we defer to the district court's factual findings if they are supported by the record. *Candelaria v. People*, 2013 CO 47, ¶ 10.  We then review de novo whether the findings support a conclusion that the defendant is an SVP.  *Allen*, ¶ 4.

¶ 12    Although the parties disagree as to whether Garza preserved his appellate argument that the district court erroneously found that he "promoted a relationship" with S.G. primarily for the purpose of sexual victimization, we need not resolve the preservation dispute because we conclude that there is sufficient record evidence to support the court's conclusion. *See People v. Lopez*, 2020 COA 41, ¶ 7 ("General findings [supporting an SVP designation] 'might suffice, or the lack of specific findings might be harmless under Crim. P. 52(a)' if the general findings are clearly supported by ample evidence in the record." (citation omitted)).

## C.    Analysis

¶ 13    On appeal, Garza contends only that the court misapplied the "established or promoted a relationship" element of section 18-3-414.5(1)(a)(III).

¶ 14    First, Garza argues that the court made an internally inconsistent finding by concluding that he had "established or promoted a relationship [with S.G.] primarily for the purpose of sexual victimization." However, even if we were to assume that "establishing" a relationship primarily for the purpose of sexual victimization is mutually exclusive of "promoting" a relationship for

5

the same purpose, the district court's use of the word "or" indicates that the court found Garza satisfied the third prong of the SVP statute in two alternative ways. *See Gallegos*, ¶ 16 (explaining that, under section 18-3-414.5(1)(a)(III), "established" and "promoted" refer to alternative ways in which an offender might satisfy the relationship criterion because the General Assembly employed the disjunctive word "or" between the two verbs). We thus perceive no inconsistency in the court's findings.

¶ 15     Second, Garza argues that neither "preplanning" nor "repetition of offending" is enough to satisfy the "promoted a relationship" criterion. *See People v. Tunis*, 2013 COA 161, ¶ 40 (the prosecution's showing that the defendant had asked a third party if the victim's husband was home before the defendant assaulted the victim at her home and, some months earlier, had given the victim a gift did not encourage the victim to enter a broader relationship primarily for the purpose of sexual victimization); *Gallegos*, ¶ 14 (explaining that evidence showing the offender promoted a relationship excludes "the offender's behavior during the commission of the sexual assault that led to his conviction"). But even if these findings could have been more

6

detailed, the court's explanation at sentencing made it clear that it was basing its decision both on what it learned at the sentencing hearing and on its "review of the file." *See People v. Ehlebracht*, 2020 COA 132, ¶ 34 (affirming a court's SVP designation when the court's findings referenced the record but did not "detail the events that gave rise to the offense").

¶ 16    Our own review of the record reveals ample evidence that Garza's conduct toward S.G. encouraged the expansion of his relationship with her in order to foster sexual victimization. *See Gallegos*, ¶ 14 (holding that an offender "promotes a relationship" by "encourag[ing] a person with whom he had a limited relationship to enter into a broader relationship primarily for the purpose of sexual victimization").

¶ 17    Statements from S.G., R.G., and the children's mother indicate that Garza historically had a limited relationship with his children. The children's mother said that he "sat and drank, then slept all day," "[s]lept through all the responsibilities of parenting," and missed out on "the firsts for both children." R.G. said Garza "was never a father to [him]" but rather was someone who would "not take care, but be in charge of you." Likewise, S.G. reported that

every time her mother came to pick her up from Garza's she "would be so happy to get out of that place."

¶ 18    But despite this lack of a strong parental bond, record evidence supports a conclusion that Garza took affirmative steps to change the focus of his relationship with S.G. in a way that would facilitate the sexual assaults. Among other things, Garza normalized sexual behavior by "randomly walk[ing] in on [S.G.] changing" without knocking while she was "half-naked." At night, Garza played music especially for S.G. to help her fall asleep and lay beside her until she was asleep. Garza would then leave to drink beer and return to assault S.G. When S.G. cried because she was physically in pain after an assault, Garza responded in the same manner he would respond to an accidental injury, saying "[s]orry, [s]weetie, I won't do it again."[1] At times, S.G. would wake without underwear and "not feel safe" because she was missing her underwear. When she asked Garza why her underwear was missing, he explained that he took it off because it "was stinky,"

---

[1] The record indicates that S.G. did not understand what had happened to her or that it was inappropriate until after her brother reported Garza's sexual assault.

but, in reality, he was not able to get her underwear back on after he sexually assaulted her.

¶ 19 Garza also took steps to isolate S.G. to an area to promote sexual contact. *See People v. Tixier*, 207 P.3d 844, 848 (Colo. App. 2008); *People v. Mendoza*, 313 P.3d 637, 645 (Colo. App. 2011) (a stepfather "promoted a relationship" with his stepdaughter when it changed from familial to one where he "got the victim alone" for the purposes of sexual assault). S.G. was always placed on the "inside" of the communal bed, between Garza and the bed's headboard. R.G. slept on the "outside" of the bed, where he easily climbed on and off and sometimes left the room.

¶ 20 In sum, the record shows that Garza engaged in a pattern of conduct that changed the focus of his relationship with S.G., that he isolated S.G. to an area to promote sexual contact, that he introduced her to sexually intrusive conduct, and that he attempted to normalize his sexually inappropriate contact. *See Tixier*, 207 P.3d at 848. We therefore conclude that the district court did not err by finding that Garza "promoted a relationship" with S.G. Accordingly, we discern no error in Garza's SVP designation.

## III. Disposition

¶ 21 We affirm the district court's order finding that Garza is a sexually violent predator.

JUDGE J. JONES and JUDGE SCHUTZ concur.