The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Tommie Corral MENDOZA, Defendant–Appellant.

No. 08CA2453.

Colorado Court of Appeals, Div. IV.

Oct. 13, 2011.

As Modified on Denial of Rehearing Jan. 12, 2012.

John W. Suthers, Attorney General, Rhonda L. White, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Elizabeth Griffin, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge DAILEY.

In this appeal, defendant, Tommie Corral Mendoza, challenges the district court's order designating him a sexually violent predator (SVP). Because we reject his challenges to the use of an SVP Assessment Screening Instrument (SVPASI) and to the court's determination that he is an SVP, we affirm.

## I. Background

In connection with numerous alleged sexual assaults of his teenage stepdaughter, defendant was charged with one count of sexual assault on a child, one count of sexual assault on a child as a pattern of abuse, five counts of sexual assault on a child by one in a position of trust, and three counts of habitual criminal. Defendant pleaded guilty to an added count of attempted sexual assault on a

child in exchange for dismissal of all other charges.

At sentencing, defendant filed a motion to, among other things, declare the sexually violent predator risk assessment part of the SVP statute, section 18–3–414.5, C.R.S.2011, unconstitutional and, consequently, to exclude consideration of his SVPASI. Ultimately, the court denied defendant's motion and determined that he met the SVP criteria. The court sentenced him to a six-year term of imprisonment.

## II. Overview

An SVP is an offender (1) who is eighteen years of age or older as of the date of the offense; (2) who has been convicted of an enumerated sexual offense; (3) whose victim was a stranger or was a person with whom the offender established or promoted a relationship primarily for the purpose of sexual victimization; and (4) who is likely to subsequently commit one or more of the enumerated offenses under the circumstances specified in the statute. § 18–3–414.5(1)(a), C.R.S. 2011.

When a defendant is convicted of one of the enumerated offenses

> the probation department shall, in coordination with the evaluator completing the mental health sex offense specific evaluation, complete the sexually violent predator risk assessment.... Based on the results of the assessment, the court shall make specific findings of fact and enter an order concerning whether the defendant is a sexually violent predator.

§ 18–3–414.5(2), C.R.S.2011.[1]

With respect to the risk assessment, "[t]he General Assembly recognized the necessity of, among other things, providing for the comprehensive evaluation of sex offenders subject to the supervision of the criminal justice system and created a program that standardizes such evaluation." *People v. Brosh*, 251 P.3d 456, 459–60 (Colo.App.2010); *see also* § 16–11.7–101, C.R.S.2011.

As part of that program, the General Assembly created the Sex Offender Management Board (Board),[2] which "consult[s] on, approve[s], and revise[s], as necessary, the risk assessment screening instrument [the SVPASI] developed by the division of criminal justice [Division] to assist the sentencing court in determining the likelihood that an adult sex offender will commit one or more of the offenses specified in [the SVP statute]." § 16–11.7–103(4)(d), C.R.S.2011; *accord* § 24–33.5–503(1)(*o* ), C.R.S.2011 (Division "develop[s], in consultation with the [Board] ... the risk assessment screening instrument"). In carrying out its duties as to the SVPASI, the Board is required to consider sex offender risk assessment research. § 16–11.7–103(4)(d).

The Division and Board created a three-part SVPASI: part one asks for information about the offender, including the crime for which he or she was convicted and whether it qualifies as an SVP enumerated offense; part two asks whether the offender meets the relationship criteria in section 18–3–414.5(1)(a)(III), C.R.S.2011, that is, whether the victim was a stranger to the offender or whether the offender established or promoted a relationship with the victim primarily for the purpose of sexual victimization; and part three assesses the offender's probability of reoffending, based, as pertinent here, on a Sex Offender Risk Scale (SORS).[3]

---

1. Several significant consequences attach to an SVP designation. *See* § 16–22–108(1)(d)(I), C.R.S.2011 (requiring each SVP to register as a sex offender every ninety days for the rest of his or her life); § 16–22–111(1), C.R.S.2011 (requiring CBI to post a publicly available Internet list of the name, address, photograph, and physical description of each SVP, and description of the crimes committed by each SVP); § 16–13–903(3), C.R.S.2011 (requiring law enforcement to notify the community into which an SVP will be released, and to provide community notification every time an SVP moves).

2. *See* § 16–11.7–103(1), C.R.S.2011; *Brosh*, 251 P.3d at 460.

3. Prior to the recent revision of the SVPASI, the probability of reoffending was also measurable both by the existence of a mental abnormality predisposing a person to commit a criminal sexual act and, in conjunction with a refusal to participate in a SORS interview, by various employment and criminal history considerations.

At the time of defendant's evaluation, the SORS comprised ten items. Seven items called for certain data (i.e., whether the offender had one or more juvenile felony adjudications, had one or more prior adult felony convictions, was employed full time at arrest, failed first or second grade, possessed or threatened use of a weapon during the current crime, or reported that he was not sexually aroused during the current crime, and whether the victim had ingested or was administered alcohol or drugs during the current crime). The remaining three items entailed evaluations of the offender's denial of the offense, deviant sexual practices, and motivation to participate in treatment.

The three evaluations were based on "scales." At the time of defendant's evaluation, each of the scales comprised an eight-factor checklist. For each individual factor on the checklist, a trained evaluator was required, based on an assessment of the offender, to enter a score of zero to five. If an offender scored twenty or more on the denial or deviancy scales or twenty or less on the motivation scale, that particular scale would be marked as counting against him or her on the overall SORS. A score of four or more marks (out of the ten items on the SORS) against the offender qualified him or her as a high risk for reoffending. If an offender was categorized as high risk and met the requirements of parts one and two, he or she was considered, under Division and Board guidelines, to have met the SVP criteria.

■ SORS findings—including those based on the scales—are reviewable by sen-

tencing courts. *See* § 18-3-414.5(2) ("Based on the results of the assessment, the court shall make specific findings of fact and enter an order concerning whether the defendant is a[n] [SVP]."); *People v. Allen,* 310 P.3d 83, 87 (Colo.App.2010) (*cert. granted,* 2011 WL 2814341 [July 18, 2011]) (plain language of section 18-3-414.5 indicates that the court is not bound by the SVPASI results in determining whether a defendant qualifies as an SVP).

### III. Use of the SVPASI in This Case

■ On appeal, defendant contends that the district court erred in relying on the SVPASI to find that he was an SVP because (1) it failed to predict likely future commission of an SVP offense; (2) it violated equal protection and procedural due process guarantees; and (3) under a more recent, revised SVPASI, he would not qualify as an SVP.[4]

#### A. Prediction of Future Offenses

■ Initially, defendant contends that, contrary to the dictates of section 16-11.7-103(4)(d), the SVPASI does not predict likely future commission of an SVP offense but, instead, only identifies offenders who are likely to fail treatment or be rearrested for non-sexual violent crimes. We disagree.

In *Brosh,* the defendant similarly argued that the version of the SORS with which we are concerned here did not determine whether an offender was likely to reoffend by committing any of the offenses enumerated in the SVP statute. In rejecting this argument, the division cited research specifically

---

4. Defendant also contends that the SVPASI improperly addressed and expanded the plain meaning of the "relationship prong" of the SVP statute. However, because he did not argue this contention before the trial court, he would not, in the absence of plain error, be entitled to reversal on this ground. *See* Crim. P. 52(b). Because nothing in our statutes or previous case law would have alerted the court to the possibility that the SVPASI might be invalid on this ground, we discern no "obvious" error, if error at all, here. *See generally People v. Taylor,* 159 P.3d 730, 738–39 (Colo.App.2006) (plain error is error that "is so clear-cut, so obvious, a competent trial judge should be able to avoid it without benefit of objection"); *see also United States v. Story,* 635 F.3d 1241, 1248–49 (10th Cir. 2011) (" 'In general, for an error to be contrary to well-

settled law, either the Supreme Court or this court must have addressed the issue.' But even where there is no such precedent, we may find plain error where the district court has engaged in a 'clearly erroneous' application of statutory law.") (citations omitted) (quoting *United States v. Ruiz-Gea,* 340 F.3d 1181, 1187–88 (10th Cir. 2003), and *United States v. Poe,* 556 F.3d 1113, 1129 (10th Cir. 2009)); accord *People v. Sandoval-Candelaria,* —— P.3d ——, —— (Colo.App. 2011) (recognizing that, generally "[i]f an issue has not yet been decided by a division of this court or the Colorado Supreme Court, then the trial court's error is not obvious, and therefore not plain."); *People v. Mosley,* 167 P.3d 157, 161–62 (Colo.App. 2007) (statutory violations can be "obvious" errors).

considered by the Board, and discussed in the Board *Handbook: Sexually Violent Predator Assessment Screening Instrument* (2008)[5], "which demonstrate[d] the appropriateness of using failure to succeed in treatment and supervision as a predictor of recidivism by sex offenders." *Brosh*, 251 P.3d at 460 (citing *Handbook*, at 45, 52–53).

In addition, the division noted that the *Handbook*

discusse[d] the research related to risk assessment of sex offenders; the accuracy of the SORS[;] … the tendency for "sexual crimes," as compared to "violent crimes," to be underreported or not result in arrest; and … the risk of arrest for violent crimes as a "reasonable proxy" in measuring recidivism of sex offenders.

*Brosh*, 251 P.3d at 460 (citing *Handbook*, at 59–60, 62).

Accordingly, the division concluded that the Board satisfied the objectives and criteria set forth in what is now section 16–11.7–103(4)(d) for developing the SVPASI. *Brosh*, 251 P.3d at 460. In so concluding, the division rejected the defendant's contention that the SORS was invalid because it failed to assess the requisite likelihood to reoffend. *Id.*

Because we find *Brosh* persuasive, we similarly conclude that, based on the above-mentioned Board research, the SVPASI was not invalid for lacking sufficient bases upon which to predict the likelihood of committing a future SVP offense.

## B. Constitutional Challenges

Next, we reject defendant's contention that the SVPASI violated equal protection and procedural due process guarantees.

■ Statutes are presumed to be constitutional. A party attacking the validity of a statute must establish its unconstitutionality beyond a reasonable doubt. *People v. Watkins*, 126 P.3d 309, 311 (Colo.App.2005).

### 1. Equal Protection

■ The constitutional guarantee of equal protection of the laws requires like treatment of persons who are similarly situated. *Id.* Thus, to state a claim for an equal protection violation, a defendant must establish that he or she is treated differently from similarly situated individuals. *Id.*

■ Defendant argues that the SVP statute, although facially benign, treats similarly situated persons differently because the Division's research established that an offender designated as an SVP based on a SORS score of four or more was slightly less likely to be rearrested for an SVP offense than one not designated as an SVP.[6]

Initially, we note that while defendant's observation regarding the Division's research is correct, it does not recognize that the same research showed that an SVP with a SORS score of four or more had an arrest rate of 34.5% for a new violent offense arrest (as compared to 8.2% for a non-SVP) and an arrest rate of 72.4% for any new offense arrest (as compared to 38.8% for a non-SVP). *Handbook*, at 62.

Further, the *Handbook* explains,

Because violent crimes are almost twice as likely to be reported to law enforcement compared to sexual crimes, and because research has found that only 43 percent of reported sex crimes against adults result[ ] in an arrest, and fewer still in prosecution and conviction, the [Division's Office of Research and Statistics] uses violent arrest as the recidivism measure in sex offender studies. The use of violent crime as an outcome measure is a reasonable proxy, as these crimes have a significant impact on public safety and, in the case of sex offenders, may have a sexual component or motivation.

*Id.* (citations and footnote omitted).

In view of this research, we are not convinced that, based on the slight difference between the arrest rate of an SVP versus a non-SVP for a sexual offense, the SVP stat-

---

5. Available at http://cospl.coalliance.org/fez/eserv/co:4626/ps788p912008 internet.pdf.

6. The Division research showed that an SVP had an arrest rate of 24.1% for a new sexual offense, versus 24.5% for a non-SVP. *Handbook*, at 62.

# 643

## 2. Procedural Due Process

■ We likewise conclude that the SVPA-SI did not violate defendant's right to procedural due process.

Defendant argues that the denial and motivation scales lacked standards and safeguards to ensure a consistent and even-handed application as required by procedural due process. In his view, the scoring on those scales was subjective and unreviewable, and accordingly, his SVP designation must be reversed. We reject defendant's argument.

As an initial matter, the People contend that because the requirements of due process only apply to the deprivation of a liberty or property interest and an SVP designation does not constitute punishment, defendant's argument does not implicate due process. We disagree with the People. *See People v. Tuffo,* 209 P.3d 1226, 1231 (Colo.App.2009) (holding that an SVP determination is subject to due process requirements).

■ "Procedural due process involves the manner in which state action occurs and requires notice and a fair opportunity to be heard." *People v. Oglethorpe,* 87 P.3d 129, 133 (Colo.App.2003). It is a flexible standard, *id.,* which does not impose rigid requirements on courts making SVP findings. *Tuffo,* 209 P.3d at 1232.

However, contrary to defendant's argument, the denial and motivation scales were not without safeguards and standards:

- Only Board-approved evaluators or trained Department of Corrections (DOC) staff or contractors were permitted to complete this section of the SVPA-SI; and

- The SVPASI provided instructions on how to assign scores to an offender on each of the factors, stating, "Please endorse each of the [ ] items as they apply to the client: '0' means 'does not apply at all' to a '5' meaning 'applies very much.'"

■ That an evaluator may have had to exercise his or her judgment in assigning scores on each of the factors does not necessarily violate procedural due process. *See Montana Power Co. v. Pub. Serv. Comm'n,* 206 Mont. 359, 671 P.2d 604, 610 (1983) ("due process is not a yardstick but a delicate process involving the exercise of judgment"); *cf. People v. Ferguson,* 55 Misc.2d 711, 286 N.Y.S.2d 976, 982 (N.Y.Sup.Ct.1968) ("The fact that the judgment to be exercised by the jury clerk entails the use of some discretion does not render such judgment so subjective that it collides with constitutional concepts of equality."). Indeed, judgments of this type, that is, assigning relative scores to a transaction, are commonplace.

Additionally, the *Handbook* indicates that researchers tested whether the denial and motivation scales were applied evenhandedly to different offenders:

Researchers during the original study analyzed whether the responses from the [Board]-approved evaluators were similar and statistically "hung together" in a reliable way. Indeed, the three Checklist items in the SORS were found to be very reliable statistically and they proved to be strong predictors of both treatment failure and arrest for sex or violent crimes.

*Handbook,* at 41.

Further, it is the trial court, not the Board evaluator or DOC staff, that reviews the SVPASI and makes the ultimate decision as to whether an offender qualifies as an SVP. *See Allen,* 310 P.3d at 87 (affirming SVP determination where trial court "disagreed with the evaluator's scoring approach in calculating [the] defendant's level of denial, deviancy, and motivation," and designated him an SVP despite the SVPASI finding that he had not met the criteria); *cf. Columbus Foundries, Inc. v. Moore,* 175 Ga.App. 387, 333 S.E.2d 212, 214 (1985) (if the exercise of judgment is conclusive and totally unreviewable, questions of due process loom large).

■ Here, defendant was afforded a hearing before the district court in which he challenged his scores on the denial and motivation scales. The district court considered his argument, reviewed the SVPASI, and concluded that defendant should be designated an SVP. Under these circumstances, we

conclude that defendant was not denied procedural due process.

### C. More Recent SVPASI

█ Defendant contends that because, under the recently revised 2010 SVPASI, he would not be designated an SVP, his SVP status must be reversed. We are not persuaded.

As pertinent here, the 2010 SVPASI differs from the one used to assess defendant in that the denial, deviancy, and the motivation scales have been removed, the SORS no longer includes items based on those scales, and the SORS now comprises six largely new items. *See Handbook: Sexually Violent Predator Assessment Screening Instrument* 4 (rev.Aug.2010).[7]

Although defendant asserts that, under the revised SORS, he would not have scored enough points to qualify as an SVP, he provides no authority suggesting that he is entitled to be reevaluated under the revised instrument.

Section 16–11.7–103(4)(d) expressly requires the Board to "revise, as necessary, the risk assessment screening instrument." That statute does not, however, allow offenders designated as SVP's under past versions of the SVPASI to be reassessed under any revised versions. *Cf. People v. Pineda–Eriza*, 49 P.3d 329, 333 (Colo.App.2001) ("A defendant is not entitled to the ameliorative effects of amendatory legislation if the legislature has not indicated its intent to require retroactive application thereof."). Indeed, it would lead to absurd results to require district courts to reevaluate all previously designated SVP's every time the Board revises the SVPASI to determine whether they meet the new SVP criteria.

Therefore, we conclude that defendant was not entitled to be reassessed under the 2010 revised SVPASI.

### IV. Defendant's SVP Designation

Finally, we reject defendant's contention that the district court erred in designating him an SVP.

In the district court, defendant argued that the finding in the SVPASI that he promoted a relationship with the victim for the purpose of sexual victimization was erroneous. He also asserted that he should not have been characterized as a high risk on the SORS because, among other things, the scores on the "denial" and "motivation" scales were incorrect.

The court found that, at "a minimum level," defendant had changed the focus of the relationship with the victim, that is, he had "a relationship [with her] that was nonsexual and [ ] had taken steps to direct it to be more of a sexual relationship." Accordingly, the court determined that he had promoted a relationship with her for the purpose of sexually victimizing her. Further, the court concluded that defendant's SORS scores met the minimum requirements.

On appeal, defendant argues that (1) the prosecution did not prove that he promoted a relationship with the victim primarily for the purpose of sexual victimization; (2) his scores on the motivation and denial scales were refuted or unsupported by evidence; and (3) because, at the time of his offense, attempted sexual assault on a child was not a qualifying offense, the SVP statute, as applied to him, violated ex post facto principles.

### A. Promoted a Relationship

█ Facts supporting a trial court's SVP designation need not be proven to a jury beyond a reasonable doubt. *People v. Valencia*, 257 P.3d 1203, 1207 (Colo.App.2011). Instead, as in all sentencing matters, a court may consider any reliable evidence and is bound only by due process. *Id.* "Proof by a preponderance of the evidence of facts relied upon in sentencing determinations generally satisfies due process considerations." *Id.* (quoting *Brosh*, 251 P.3d at 461).

█ We review a district court's factual findings for clear error, but review de novo whether those findings are sufficient to support a legal conclusion that defendant is an SVP within the meaning of the statute. *Tuffo*, 209 P.3d at 1230.

7. Available at http://dcj.state.co.us/ors/pdf/docs/ Risk%20Assessment/ mergedŠVPhandbook.pdf.

As used in the. SVP statute, the word "promote" means "to encourage" and "to enlarge." *People v. Tixier*, 207 P.3d 844, 847 (Colo.App.2008) (quoting *Webster's Third New International Dictionary* 1815 (1986)). An offender can promote a relationship "when he and the victim have had a previous relationship, which was limited in its nature, purpose, and customary time and place of interaction, but the offender encouraged the expansion of that relationship to foster sexual victimization." *Valencia*, 257 P.3d at 1207. "To promote a relationship primarily for the purpose of sexual victimization, an offender must engage in some conduct, beyond the sexual assault itself, which is designed to establish an initial relationship or to expand an existing relationship into one primarily for the purpose of sexual victimization." *Id.* at 1208.

In our view, the record supports a finding that defendant engaged in conduct designed to expand his existing relationship with his stepdaughter into one primarily for the purpose of sexual victimization. Prior to his sexual advances, his relationship with the victim was limited to a familial relationship between stepfather and stepdaughter. Defendant changed that relationship, however, to a sexual one when he got the victim alone and kissed her on the mouth, and then, later that day, had sex with her. *See Tixier*, 207 P.3d at 848 ("[A]lthough relationships between and activities shared by ... stepparents and stepchildren vary, a prosecutor may seek to prove, and a [fact finder] could find, that an offender encouraged his ... stepchild to expand their relationship beyond the nature and purpose of such a familial relationship and that the offender did so primarily for the purpose of sexually victimizing the child.").

We also reject defendant's argument, raised for the first time on appeal, that the district court did not make specific findings of fact to support its conclusion that he promoted his relationship with the victim. To the contrary, the court addressed the issue in sufficient detail, *see Morris v. Belfor USA Group, Inc.*, 201 P.3d 1253, 1263 (Colo. App.2008) (trial court's findings and conclusions must be sufficient to allow appellate court to understand the basis of its order), and, in any event, the evidence supporting this part of the SVP determination was ample. *See Tuffo*, 209 P.3d at 1232 ("More general findings might suffice, or the lack of specific findings might be harmless under Crim. P. 52(a), if the evidence supporting an SVP conclusion w[as] ample.").

### B. Motivation and Denial Scales

We are also not persuaded that defendant's scores on the motivation and denial scales were refuted or unsupported by the evidence.

Initially, we note that although defendant asserts that his scores on the denial scale were refuted by the evidence or unsubstantiated and arbitrary, he does not support his assertion with any meaningful argument. Consequently, we do not address it. *See Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983) ("The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them."); *People v. Wallin*, 167 P.3d 183, 187 (Colo.App.2007) (declining to address arguments presented in a perfunctory or conclusory manner); *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim."); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *CSX Transp., Inc. v. Miller*, 159 Md.App. 123, 858 A.2d 1025, 1083 (2004) ("If [the party] wanted a weightier resolution of the issue, it should have mounted a weightier contention. Gravitas begets gravitas.").

The evaluator scored defendant at seventeen points on the motivation scale. At sentencing, defendant asserted that the evaluator's scores of less than five on seven of the eight factors were unsubstantiated. The court concluded that "even adjusting for some of [defendant's challenges]," it did not believe that the total scores on the scales

would change enough to alter his overall SORS score.

On appeal, defendant argues that if his motivation score were adjusted by only four points (i.e., from seventeen to twenty-one), he would not have met the Board requirements for being designated an SVP.

In support of his assertion, he first argues, as he did during sentencing, that, because he paid full attention to the evaluator, was positive about testing, and completed the evaluation requirements, he should have received fives on those factors instead of three, two, and three. However, defendant offers no evidence that contradicts the scores he received on those factors. Although, as defendant noted in the district court, the evaluator characterized him as "polite and cooperative," in our view, neither of those adjectives has any bearing on the challenged factors.[8]

Defendant also argues that, because he verbalized a desire for treatment "in his first police statement and currently," his guilty plea indicated his agreement with court intervention, and he was seeking additional help by referring himself to drug and alcohol counseling and requesting medication, his scores of zero on those factors were arbitrary and unwarranted. However, the report by the evaluator who completed the motivation scale contradicts defendant's arguments. It states:

- "[Defendant] reported that in his 'heart' he knows he does not require offense specific treatment, and just wants to move on with his life";
- "While [he] would most likely benefit from offense specific treatment, he adamantly advised he does not require offense specific treatment because he is not a sexual offender"; and

- "Overall, his amenability to treatment is considered poor." [9]

Under the circumstances, we conclude that the evaluator's scores find support in the record, and thus, the district court did not err in relying on them.

## C. Ex Post Facto

Finally, we reject defendant's contention that, because when he committed the offense, attempt was not an SVP qualifying offense, the application of the SVP statute to him violated the Ex Post Facto Clause.

The attempt offense for which defendant was convicted was committed between February and September 2004. The SVP statute then in effect did not include inchoate crimes (like attempt) as enumerated SVP offenses. *See* Ch. 286, sec. 9, § 18–3–414.5(1)(a)(II), 1999 Colo. Sess. Laws 1148. In 2006, the section was amended to include "an attempt, solicitation, or conspiracy to commit one of the [enumerated] offenses." *See* Ch. 288, sec. 8, § 18–3–414.5(1)(a)(II), 2006 Colo. Sess. Laws 1314.

Constitutional prohibitions against ex post facto laws forbid the General Assembly from retroactively increasing or making more onerous a crime's applicable punishment. *People v. Durapau*, 280 P.3d 42, 48 (Colo.App. 2011).

Here, the retrospective application of the 2006 amendment to defendant's case does not violate ex post facto protections because the sexual offender registration and community notification consequences of an SVP designation do not constitute punishment. *See Tuffo*, 209 P.3d at 1230 (registration and notification requirements in the SVP statute are intended to protect the community rather than punish the offender; thus, they do not violate the ex post facto restriction even if

8. Although these characterizations are potentially relevant to the scale factor that assessed whether defendant actively participated in the evaluation, defendant does not challenge that factor on appeal and regardless, even if his score on that factor were adjusted from three to five, he still would have scored less than twenty on the motivation scale.

9. According to the previous *Handbook*, an offender verbalizes a desire for treatment if he or

she "expresses that he/she is willing to, would like to, or would benefit from participation in sex offender treatment"; an offender agrees with a court order for intervention if he or she "does not resist intervention services"; and an offender seeks additional help if he or she "reaches out, or indicates a willingness to reach out, to obtain external assistance and support in a prosocial fashion." *Handbook*, at 30.

applied retroactively to offenders); *People v. Rowland,* 207 P.3d 890, 895 (Colo.App.2009) (community notification requirements in the SVP statute do not constitute increased punishment); *People v. Stead,* 66 P.3d 117, 120 (Colo.App.2002) (sex offender registration does not disadvantage those offenders subject to its provisions; thus, registration is not punishment subject to ex post facto analysis).

We note that defendant also argues that the 2006 amendment to the SVP statute was not, in any event, intended to apply retroactively to offenses committed before its enactment. Because, however, that argument was raised for the first time in his reply brief, we decline to address it. *See People v. Grant,* 174 P.3d 798, 803 (Colo.App.2007).

The order is affirmed.

Judge GRAHAM and Judge GABRIEL concur.