The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
June 3, 2021

## 2021COA77

**No. 19CA0879, *People v. Williamson* — Crimes — Unlawful Sexual Behavior — Sexually Violent Predators — Sexually Violent Predator Assessment Screening Instrument**

A division of the court of appeals considers whether, when deciding to designate a defendant a sexually violent predator, a district court errs by deferring to an evaluator's assessment that, based on the results of Section 3A of the 2018 Sexually Violent Predator Assessment Screening Instrument (SVPASI), a defendant is likely to recidivate. *See* § 18-3-414.5(1)(a)(IV), (2), C.R.S. 2020. The division concludes that a district court may properly rely on such an assessment because, before approving Section 3A, the Sex Offender Management Board considered current research and established standards that are evidence based. Thus, inclusion of

Section 3A in the SVPASI does not violate the requirements of the enabling statutes. *See* §§ 16-11.7-101(2), -103(4)(d), C.R.S. 2020.

COLORADO COURT OF APPEALS       **2021COA77**

Court of Appeals No. 19CA0879
Jefferson County District Court No. 18CR3429
Honorable Diego G. Hunt, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Todd Louis Williamson,

Defendant-Appellant.

ORDER AFFIRMED

Division VI
Opinion by JUDGE RICHMAN
Berger and Welling, JJ., concur

Announced June 3, 2021

Philip J. Weiser, Attorney General, Erin K. Grundy, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Katherine C. Steefel, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Todd Louis Williamson, appeals his designation as a sexually violent predator (SVP) in connection with a judgment of convoition for attempted sexual assault on a child.  We reject his challenges to the SVP designation and affirm the district court's order designating him an SVP.

## I.     Background

¶ 2     The following facts are drawn from the presentence report and supporting documents, as well as the affidavit supporting the arrest warrant.  Williamson has agreed to the facts stated in the affidavit.

¶ 3     In 2016, a woman Williamson was dating reviewed the contents of one of his social media accounts.  The account contained multiple videos depicting sexual assaults of children.  Upon further investigation, police discovered that Williamson possessed hundreds of videos and images of child pornography.  The People charged Williamson with, among other things, sexual exploitation of a child, a class 4 felony.  § 18-6-403(3)(b.5), (5)(b)(II), C.R.S. 2020.  He pleaded guilty to that charge and was given a five-year probationary sentence.

¶ 4     In 2018, while on probation, Williamson communicated in a sexually explicit manner, via social media, with a girl who told him

she was fourteen years old.  Unbeknownst to him, he was actually communicating with an undercover police detective.  Based on these conversations, and an explicit photo he sent to the purported victim, Williamson was charged with internet sexual exploitation and internet luring of a child.  §§ 18-3-306(1), (3), 18-3-405.4(1), C.R.S. 2020.  He ultimately pleaded guilty to an added count, attempted sexual assault on a child, a class 5 felony.  §§ 18-2-101, 18-3-405(1), C.R.S. 2020.  The prosecution dismissed the remaining charges pursuant to a plea agreement.

¶ 5     Because Williamson was convicted of a sexual offense, Colorado's SVP statute, § 18-3-414.5, C.R.S. 2020, required the district court to determine at sentencing whether he should be designated an SVP.  As relevant here, under the statute, a defendant is an SVP if he (1) is eighteen years of age or older as of the date of the offense; (2) has been convicted of certain enumerated sexual offenses; (3) has committed an enumerated offense against a stranger or a person with whom he "established or promoted a relationship primarily for the purpose of sexual victimization"; and (4) according to the results of a "risk assessment screening instrument . . . approved by the sex offender management board

2

established pursuant to section 16-11.7-103(1), [C.R.S. 2020,] is likely to subsequently commit one or more of the [enumerated sexual offenses]" against a similarly situated victim. § 18-3-414.5(1)(a)(I)-(IV).

¶ 6    In evaluating whether Williamson should be designated an SVP, the district court considered, among other items, the results of a Sexually Violent Predator Assessment Screening Instrument (SVPASI) that was administered by a trained evaluator and approved by the Sex Offender Management Board (SOMB). The SVPASI contained three parts. If a defendant met the criteria under any part, SVP designation was recommended.

¶ 7    Under Part 3A, the evaluator was instructed to recommend SVP designation if a defendant had previously been convicted of at least one felony or two misdemeanor "sex offenses" as that term is defined in section 16-11.7-102(3), C.R.S. 2020. Part 3B contained a Sex Offender Risk Scale (SORS), an actuarial risk assessment scale to be completed by the evaluator. The SORS placed certain risk factors into an equation — namely, the defendant's age at the time of his earliest sex offense and the number of prior criminal cases and probation revocations on his record. These factors were

weighted and then the equation was solved, yielding a numeric score. The evaluator was to recommend SVP designation only if a defendant scored 22 or above on the SORS. Part 3C measured whether a defendant met certain criteria indicating he suffered from psychopathy or a personality disorder, factors that also triggered an SVP recommendation.[1]

¶ 8      Due to Williamson's prior sex offense conviction, he met the criteria for designation under Part 3A of the SVPASI, and the evaluator recommended that the court designate him an SVP on this basis. Although the screening form instructed the evaluator not to fill out Part 3B if a defendant met the criteria of Part 3A, the evaluator did so. Williamson scored only a -3.060 on Part 3B, well below the threshold for designation. Further, Williamson did not meet the criteria for designation under Part 3C.

¶ 9      Deferring in part to the evaluator's recommendation under Part 3A, the district court designated Williamson an SVP. Williamson objected to the designation, and the court invited him to

---

[1] Williamson was evaluated under the 2018 SVPASI. The current SVPASI retains this format, and categorizes prior sex offenses as a standalone factor that may trigger SVP designation.

file a motion for reconsideration.  Several months later, he did so.  In his motion, he challenged the court's deference to the evaluator's recommendation in Part 3A of the SVPASI, arguing that his single prior conviction for a sex offense is an unreliable measure of his tendency to recidivate, especially where he received a low score on Part 3B of the SVPASI.  The court denied the motion, noting that "it is not within the purview of this court to determine the validity of the methodology of the risk assessment . . . ."

¶ 10    On appeal, Williamson renews the arguments he made below.  He asserts that the district court erred, and violated his right to due process, by relying on Part 3A of the SVPASI.  He further argues that even if the district court's designation was proper, SVP designation violates constitutional prohibitions on the imposition of cruel and unusual punishments.  *See* U.S. Const. amend. VIII; Colo. Const. art II, § 20.

## II.    The Court Did Not Err By Relying on the Evaluator's Recommendation in Part 3A of the SVPASI

### A.    The SVP Statute

¶ 11    Williamson's challenge to the statutory validity of Part 3A of the SVPASI requires that we construe the SVP statute.  The proper

5

interpretation of a statute is a legal question that we review de novo. *Allen v. People*, 2013 CO 44, ¶ 4.

¶ 12     When we construe a statute, we focus on its plain language. *People v. Gallegos*, 2013 CO 45, ¶ 7. We attempt to discern and give effect to the General Assembly's intent. *Id.* In doing so, we must be careful not to impute new meaning to the language. *People v. Gholston*, 26 P.3d 1, 7 (Colo. App. 2000). Whenever possible, we must give all the language in the statute "consistent, harmonious, and sensible effect." *Gallegos*, ¶ 7 (quoting *People v. Banks*, 9 P.3d 1125, 1127 (Colo. 2000)). Accordingly, we read statutory words and phrases in their full context and afford them their common meaning. *Id.* We avoid statutory constructions that conflict with the legislative intent. *People v. Brosh*, 251 P.3d 456, 459 (Colo. App. 2010).

¶ 13     The SVP statute is part of an enactment by which the General Assembly sought to "create a program that establishes *evidence-based standards* for the evaluation, identification, treatment, management, and monitoring" of sex offenders to prevent them from reoffending and to protect current and potential victims. § 16-11.7-101(2), C.R.S. 2020 (emphasis added). To that end, the

General Assembly created the SOMB and tasked it with consulting on, approving, and, as necessary, revising a "risk assessment screening instrument" to "assist the sentencing court in determining the likelihood that an adult sex offender will" recidivate. § 16-11.7-103(4)(d). When carrying out its duties, the SOMB is statutorily required to "*consider research* on adult sex offender risk assessment" and the risk posed by defendants that suffer from psychopathy or a personality disorder. *Id.* (emphasis added); *Allen*, ¶ 32 (Márquez, J., concurring in the judgment). The incorporation of evidence-based standards into the recidivism prong of the SVP designation standard demonstrates the General Assembly's intent to limit SVP designations only to those defendants that pose a high level of risk to the community. *Allen*, ¶ 32 (Márquez, J., concurring in the judgment).

¶ 14    The statute instructs courts considering an SVP designation to "make specific findings of fact and enter an order concerning" whether a defendant is an SVP based on the results of the SOMB assessment instrument. § 18-3-414.5(2). While the district court makes the ultimate SVP designation, our supreme court has stated that the results of the assessment instrument "should serve as the

primary aid" to the district court and has instructed courts to give substantial deference to the recommendation in the SVPASI. *Allen*, ¶ 15. If a court chooses to deviate from the SVPASI, it must make specific findings to justify its deviation. *Id.* It should not re-score the instrument. *Id.* at ¶ 16. Moreover, even if the court does not deviate from the SVPASI's recommendation, it should make findings concerning each of the four criteria set forth in section 18-3-414.5(1)(a), which lays out the standard for SVP designation. *People v. Loyas*, 259 P.3d 505, 512 (Colo. App. 2010), *overruled in part on other grounds by Page v. People*, 2017 CO 88.

¶ 15    In light of this statutory language as it has been construed by Colorado courts, Williamson argues that any valid SOMB risk assessment screening instrument must (1) assist the sentencing court to determine the likelihood that a defendant will recidivate; (2) consider research on adult sex offender risk assessment; and (3) establish evidence-based standards for evaluation and identification of SVPs. However, according to Williamson, neither the SVPASI nor the handbook used by evaluators to administer it asserts or even strongly implies that the standard used in Part 3A is a research- and evidence-based metric that assists the court with its recidivism

analysis. Accordingly, Williamson argues, Part 3A is a statutorily invalid method of assessing the likelihood of recidivism and the court erred in relying on it instead of the actuarial assessment contained in Part 3B.

¶ 16    Although this contention is not without some merit, and it would have been preferable for the SOMB to explicitly set forth the evidence it relied upon with respect to Part 3A, we decline Williamson's invitation to engraft the SVP statute with a requirement that each part of the SVPASI, or the handbook addressing that part, must specifically identify the research and evidence upon which it is based. The plain language of the SVP statute simply does not indicate that there is any such requirement. *Gholston*, 26 P.3d at 7 (noting that we must not impute new meaning to statutory language). The other relevant statutes require only that the SOMB *consider* research regarding risk assessment and that it *establish* standards that are evidence based before it approves the SVPASI. §§ 16-11.7-101(2), -103(4)(d). Further, nothing in section 18-3-414.5(1)(a) or sections 16-11.7-101(2) and -103(4)(d) indicates that the legislature meant to require the

SOMB to limit the screening instrument to a scored component like the SORS.

¶ 17    Further, it is evident that the SOMB considered relevant research and established standards based on that research when it created and approved the SVPASI.  Williamson was evaluated using the SOMB's *2018 SVPASI Handbook,* https://perma.cc/6689-LUYA.  According to the handbook, the SVPASI administered to Williamson "identifies those individuals most likely to commit a subsequent sexual or violent offense."  *Id.* at 1.  Logically, this pronouncement includes Part 3A.

¶ 18    The handbook also describes the research study conducted in connection with Part 3B, the SORS.  It describes a study of 4,698 adults convicted or given a deferred judgment for an SVP-eligible crime in Colorado during a certain period.  It notes that "[e]xcluded from [the study] were those individuals with one prior adult felony sex offense conviction or two misdemeanor sex offense convictions because these individuals will quality for SVP eligibility [under Part 3A]."  *Id.* at 16-17.  It further notes, however, that "actuarial methods are limited because offenders in any study group may vary on factors not measured" and "[t]he research literature is quite clear

that criminal history," among other factors, is a "relevant and statistically powerful" indicator of risk. *Id.* at 19. While the handbook discusses this evidence in support of the SORS, the research nonetheless supports the SOMB's decision to include prior sexual offense criteria in the SVPASI. These statements show that the SOMB considered research on the significance of criminal history before deciding to place separate emphasis on prior sex offenses.

¶ 19    Moreover, as Williamson points out, when the SOMB voted to use the applicable version of the SVPASI, it extensively discussed the wisdom of separating the assessment of defendants with prior sex offenses from the assessment of those who may meet other risk criteria under the SORS. According to the minutes of the first meeting where the significance of Part 3A was discussed, SOMB members explicitly considered whether keeping Part 3A would make the SVPASI more empirically validated and would be a valid indicator of risk. SOMB, *Minutes of Meeting* (Sept. 16, 2016), https://perma.cc/TYB5-Y8NE. At the following meeting, several board members stated that after further investigation, they concluded that sex offense history "is one of the strongest risk

11

factors there is" and is a "clear" or "key" indicator of risk. Another board member noted that Part 3A is a policy component of the SVPASI "based on research that will affect the actuarial scale" and that if Part 3A was included in the actuarial assessment in Part 3B, the SVPASI "will not capture the data in the same way as 3A." SOMB, *Minutes of Meeting* 3 (Oct. 21, 2016), https://perma.cc/UE2Y-GQYJ. Thus, based on the handbook and the SOMB meeting minutes, it is apparent that the SOMB considered current research when creating and approving the SVPASI, and that it used that research to craft evidence-based standards.

¶ 20 We conclude that the SVPASI met the relevant statutory requirements and the district court did not err by deferring to the evaluator's recommendation under Part 3A of the SVPASI.

### B. Due Process

¶ 21 Williamson further contends that the district court's reliance on Part 3A of the SVPASI violated his right to due process. Although the contours of Williamson's due process argument are not entirely clear, we understand his argument to be that an SVP designation must be based on reliable, nonspeculative evidence,

12

and no such evidence was presented here. *People v. Tuffo*, 209 P.3d 1226, 1231 (Colo. App. 2009). According to Williamson, the court's only finding with respect to his tendency to recidivate was that he had a prior sex offense conviction. He asserts that this evidence has only speculative value.

¶ 22  Whether the district court correctly applied the statute and made the proper findings when it designated Williamson an SVP are mixed questions of fact and law. *Allen*, ¶ 4. We defer to the court's factual findings if they are supported by the record but consider any legal conclusions de novo. *Id.*; *People v. Salas*, 2017 COA 63, ¶ 48.

¶ 23  As we noted above, *supra* Part II.A, it is within the SOMB's purview to determine which risk factors will be included in the SVPASI, and what weight each factor will be given, as long as the SOMB has considered research and incorporated evidence-based standards. § 16-11.7-103(4)(d). For that reason, we do not deem a prior sex offense conviction to be too speculative to support the district court's findings and conclusions regarding potential recidivism.

¶ 24     Further, the record does not support the assertion that the district court found only that Williamson had a prior conviction for a sex offense.  At the sentencing hearing, the judge made the following findings and conclusions based on the presentence report, which included both the results of the SVPASI and a Sex Offense Specific Evaluation: (1) the crime at issue included aggravated circumstances because it involved a "second felony for a second sex offense which [Williamson] committed while he was on the highest level of supervision" in his prior case; (2) consequently, he "was found to have a high degree of risk for sexual re-offense"; (3) given the "risk to the community and the risk of re-offense," Williamson would not be given another probationary sentence; (4) Williamson met the SVP statute's criteria because he was over age eighteen at the time he committed the enumerated offense, the victim was a stranger, and he had a prior sex offense conviction; and (5) he should be designated an SVP.  Thus, in addition to finding that Williamson had a prior sex offense conviction, the court specifically found that he was a risk to the community and would likely reoffend.

14

¶ 25    A court does not violate due process principles when it adopts the findings of the presentence report, including the recommendations of the SVPASI. *People v. Torrez*, 2013 COA 37, ¶ 83; *People v. Buerge*, 240 P.3d 363, 370 (Colo. App. 2009). This is particularly so where the facts relied on, including Williamson's prior conviction, are undisputed. *Tuffo*, 209 P.3d at 1231 (noting that a sentencing court may rely on uncontroverted facts in the presentence report). We discern no due process violation.

### III.    SVP Designation Is Not Cruel and Unusual Punishment

¶ 26    Finally, Williamson argues that his SVP designation constitutes a cruel and unusual punishment, and it is therefore prohibited under the United States and Colorado Constitutions. We are not persuaded.

¶ 27    Because Williamson raises a question of constitutional law, we review his challenge to the SVP statute de novo. *People v. McCulloch*, 198 P.3d 1264, 1268 (Colo. App. 2008).

¶ 28    Our supreme court has stated that "[u]nlike a criminal sentence, the SVP designation is not punishment." *Allen*, ¶ 7. Instead, its purpose is to protect the community through notification and registration requirements. § 16-22-108(1)(b), (d)(I),

15

C.R.S. 2020; §§ 16-13-901 to -906, C.R.S. 2020; *Allen*, ¶ 7; *Tuffo*, 209 P.3d at 1231 (noting that the "SVP statute is protective rather than punitive"). Because an SVP designation is not a punishment, constitutional provisions prohibiting cruel and unusual punishments do not apply. *See, e.g.*, *People in Interest of J.O.*, 2015 COA 119, ¶¶ 21, 30; *People v. Rowland*, 207 P.3d 890, 892 (Colo. App. 2009) ("Like numerous other courts, we conclude that, under the [relevant] factors, [the defendant] has not been subjected to additional punishment."); *People v. Stead*, 66 P.3d 117, 120 (Colo. App. 2002) (holding that because the lifetime registration and internet posting requirements associated with SVP designation are not punishments, the constitutional guarantee of trial by jury does not apply to SVP designation), *overruled in part on other grounds by Candelaria v. People*, 2013 CO 47. Accordingly, Williamson's SVP designation did not violate his constitutional right to be free from cruel and unusual punishments.

## IV. Conclusion

¶ 29    The district court's order designating Williamson an SVP is affirmed.

JUDGE BERGER and JUDGE WELLING concur.