24CA0185 Peo v Hudy 02-13-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0185
Gunnison County District Court No. 00CR97
Honorable J. Steven Patrick, Judge

The People of the State of Colorado,

Plaintiff-Appellant,

v.

Christopher C. Hudy,

Defendant-Appellee.

ORDER REVERSED

Division I
Opinion by JUDGE YUN
J. Jones and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 13, 2025

Jessica J. Waggoner, District Attorney, Brannon Jordan, Deputy District Attorney, Gunnison, Colorado, for Plaintiff-Appellant

Reppucci Law Firm, P.C., Jonathan D. Reppucci, Denver, Colorado; John Kenneth Pineau, Boulder, Colorado, for Defendant-Appellee

¶ 1   The People appeal the postconviction court's order granting

Christopher C. Hudy's Crim. P. 35(c) petition to remove his

designation as a sexually violent predator (SVP).  Because Hudy's

SVP designation was previously challenged and upheld on direct

appeal, and because he was not entitled to be reassessed based on

a new SVP screening instrument, his Crim. P. 35(c) petition was

successive.  We therefore reverse the postconviction court's order.

I.   Background

¶ 2   The division that considered Hudy's direct appeal summarized

the underlying facts in this case as follows:

> The victim testified that she was showering in
> a college dormitory early one morning when
> defendant entered the bathroom carrying a
> blanket.  Defendant was a person known to
> the victim because she had previously rebuffed
> his advances.
>
> Defendant attacked the victim by covering her
> head with the blanket.  The victim was able to
> free her head from the blanket as defendant
> pushed her down into the tub.  When the
> victim screamed for help, defendant repeatedly
> punched her in the head.  Defendant covered
> the victim's mouth and snapped her neck back
> and forth until she lost consciousness.
>
> When the victim awoke, she discovered that
> defendant was sitting on top of her and
> inserting his finger into her vagina.  The victim

> screamed for help, and defendant began
> punching her again before fleeing from the
> bathroom.

*People v. Hudy*, slip op. at 1 (Colo. App. No. 01CA1932, June 19, 2003) (not published pursuant to C.A.R. 35(f)) (*Hudy I*).

¶ 3     A jury convicted Hudy of first degree sexual assault, first degree burglary, second degree assault, and three crime of violence counts. *People v. Hudy*, slip op. at 1 (Colo. App. No. 04CA2210, Jan. 26, 2006) (not published pursuant to C.A.R. 35(f)) (*Hudy II*). The trial court sentenced him to concurrent sixteen-year terms in the custody of the Department of Corrections (DOC) for the second degree assault and first degree burglary convictions, to run consecutively to an indeterminate term of sixteen years to life on the sexual assault conviction. *Id.* In addition, the trial court found that Hudy was an SVP pursuant to section 18-3-414.5, C.R.S. 2005. *Id.*

¶ 4     Hudy challenged his SVP designation on direct appeal, and a division of this court concluded that the trial court properly determined that Hudy was an SVP pursuant to the statute. *Hudy I*, slip op. at 4. He then filed a timely Crim. P. 35(b) motion for reduction of sentence, arguing that the trial court erred by basing

his sentence on the conclusion that he was at a high risk to reoffend. *Hudy II*, slip op. at 3. The postconviction court denied the motion, and the *Hudy II* division affirmed. *Id.* He subsequently filed additional postconviction motions, which were denied.

¶ 5        In November 2022, more than twenty years after Hudy's SVP designation, an expert in sex offender evaluations certified by the Colorado Sex Offender Management Board (SOMB) evaluated Hudy under the then-current SVP risk assessment screening instrument and produced a report recommending that Hudy no longer be designated as an SVP. A year later, Hudy filed a Crim. P. 35(c) motion asking the postconviction court to remove his SVP designation. He explained that he had "made steady progress inside DOC through treatment"; that the SVP screening instrument had been updated since his original evaluation in 2001; and that a certified evaluator in 2022 had found that he no longer qualified for the SVP designation. Although he acknowledged that, under Crim. P. 35(c)(3)(VI), the postconviction court was required to deny any claim that was raised and resolved in a prior appeal or postconviction proceeding, he argued that his motion fell under the exception for claims "based on evidence that could not have been

discovered previously through the exercise of due diligence," Crim. P. 35(c)(3)(VI)(a) — namely, the 2022 evaluation.

¶ 6 The People opposed the motion, arguing that it was successive, untimely, and contrary to Colorado case law holding that offenders designated as SVPs under past versions of the screening instrument are not entitled to be reassessed under any revised versions. *See People v. Mendoza*, 313 P.3d 637, 644 (Colo. App. 2011). Given the division's holding in *Mendoza*, they argued, the 2022 evaluation could not be considered newly discovered evidence under Crim. P. 35(c)(3)(VI)(a).

¶ 7 After a hearing at which the 2022 evaluator testified regarding the updated SVP screening instrument and his evaluation of Hudy, the postconviction court granted Hudy's motion, finding that he was "no longer appropriate to be classified as [an SVP]." The court did not address the People's arguments that the motion was successive and untimely or that the 2022 evaluation did not fall within the Crim. P. 35(c)(3)(VI)(a) exception for newly discovered evidence. Although it acknowledged *Mendoza*, the court concluded that a more recent case holding that a motion challenging an SVP designation is cognizable under Crim. P. 35(c) represented contrary

4

authority.  *See People v. Baker*, 2017 COA 102, ¶ 14, *rev'd on other grounds*, 2019 CO 97M.  "[A]t this time," the court found, "following successful completion of sex offender treatment and the passage of 23 years, [Hudy] is no longer [an SVP]."

## II.  Analysis

¶ 8    The People contend that (1) the postconviction court's reliance on *Baker* was misplaced; (2) the court was required to deny Hudy's motion as successive under Crim. P. 35(c)(3)(VI); and (3) the court was required to deny Hudy's motion as untimely under section 16-5-402(1), C.R.S. 2024.  Because we agree with the People's first two contentions, we reverse.[1]

### A.  Governing Law and Standard of Review

¶ 9    Under section 18-3-414.5(1)(a), C.R.S. 2024, an SVP is an offender

> (1) who is eighteen years of age or older as of the date of the offense; (2) who has been convicted of an enumerated sexual offense; (3) whose victim was a stranger or was a person with whom the offender established or promoted a relationship primarily for the purpose of sexual victimization; and (4) who is

---

[1] Having concluded that Hudy's motion was successive, we need not address whether it was timely or whether justifiable excuse or excusable neglect exists for the late filing.

likely to subsequently commit one or more of the enumerated offenses under the circumstances specified in the statute.

*Mendoza*, 313 P.3d at 640; *see* § 18-3-414.5(1)(a).

¶ 10    The SVP statute is part of an enactment by which the General Assembly sought to create a program that establishes evidence-based standards to evaluate, identify, treat, manage, and monitor sex offenders. *People v. Williamson*, 2021 COA 77, ¶ 13; § 16-11.7-101, C.R.S. 2024. "To that end, the General Assembly created the SOMB and tasked it with consulting on, approving, and, as necessary, revising a 'risk assessment screening instrument' to 'assist the sentencing court in determining the likelihood that an adult sex offender will' recidivate." *Williamson*, ¶ 13 (quoting § 16-11.7-103(4)(d), C.R.S. 2024). Section 16-11.7-103(4)(d) provides as follows:

> The [SOMB] shall consult on, approve, and revise, as necessary, the risk assessment screening instrument developed by the division of criminal justice to assist the sentencing court in determining the likelihood that an adult sex offender will commit one or more of the offenses specified in [the SVP statute] under the circumstances described in [that statute]. In carrying out this duty, the [SOMB] shall consider research on adult sex offender risk assessment and shall consider as one

6

element the risk posed by an adult sex offender who suffers from psychopathy or a personality disorder that makes the person more likely to engage in sexually violent predatory offenses. If a defendant is found to be a sexually violent predator, the defendant shall be required to register . . . and shall be subject to community notification . . . .

¶ 11 A defendant may challenge an SVP designation under Rule 35(c). *Baker*, ¶ 14. A postconviction court's ruling on a Rule 35(c) motion after a hearing presents a mixed question of fact and law. *People v. Sharp*, 2019 COA 133, ¶ 12. "We defer to the court's findings of fact if they have record support, but we review any legal conclusions de novo." *Id.* We also review the court's interpretation of statutes and the rules of criminal procedure de novo. *Allen v. People*, 2013 CO 44, ¶ 4; *People v. Segura*, 2024 CO 70, ¶ 21.

## B. Discussion

¶ 12 The People argue that Hudy's Rule 35(c) motion is successive because his SVP designation was previously challenged and upheld on direct appeal. They further contend that *Mendoza* precluded the postconviction court from considering Hudy's 2022 SVP evaluation as newly discovered evidence. We agree.

7

¶ 13    Crim. P. 35(c) allows a defendant to challenge a judgment of conviction on the ground that it was obtained in violation of his constitutional or statutory rights.  *See* Crim. P. 35(c)(2)(I); *People v. Valdez*, 178 P.3d 1269, 1279 (Colo. App. 2007).  But a defendant is not entitled to perpetual review of his postconviction claims.  *See People v. Rodriguez*, 914 P.2d 230, 249 (Colo. 1996).  The postconviction court is therefore required to deny any claim that was raised and resolved in a prior appeal or postconviction proceeding.  Crim. P. 35(c)(3)(VI).  An exception exists for "[a]ny claim based on evidence that could not have been discovered previously through the exercise of due diligence."  Crim. P. 35(c)(3)(VI)(a).

¶ 14    Although *Mendoza* is not a Crim. P. 35(c) case, it is nonetheless instructive.  In that case, the defendant argued that the SVP screening instrument had been revised since the time of his evaluation and that, had he been evaluated instead under the revised version, "he would not have scored enough points to qualify as an SVP."  *Mendoza*, 313 P.3d at 644.  Accordingly, he argued, his SVP status must be reversed.  *Id.*  A division of this court held that, even if it were true that the defendant would not have been

8

designated as an SVP under the revised screening instrument, he was not entitled to be reevaluated. *Id.* Although "[s]ection 16-11.7-103(4)(d) expressly requires the [SOMB] to 'revise, as necessary, the risk assessment screening instrument,'" the court explained, "[t]hat statute does not, however, allow offenders designated as SVP's under past versions of the [screening instrument] to be reassessed under any revised versions." *Id.* The division reasoned that holding otherwise "would lead to absurd results [by requiring] district courts to reevaluate all previously designated SVP's every time the [SOMB] revises the [screening instrument] to determine whether they meet the new SVP criteria." *Id.*

¶ 15    In light of *Mendoza*'s holding that offenders designated as SVPs are not entitled to be reassessed under revised versions of the screening instrument, Hudy's 2022 evaluation did not constitute newly discovered evidence under Crim. P. 35(c)(3)(VI)(a). The postconviction court was thus required to deny Hudy's challenge to his SVP designation as successive under Crim. P. 35(c)(3)(VI) because his designation was previously raised and resolved on direct appeal. Accordingly, it was improper for the postconviction

9

court to consider Hudy's 2022 evaluation and remove his SVP designation.

¶ 16    We are not persuaded otherwise by the postconviction court's conclusion that *Baker* represents contrary authority and calls *Mendoza* into doubt.  In *Baker*, the defendant filed a postconviction motion arguing that the trial court had erred by "simply adopting the findings in the [SVP] [s]creening [i]nstrument without making its own findings [about] whether the relationship criterion of the SVP statute had been met."  *Baker*, ¶ 9.  The postconviction court denied the motion, finding that "it had no authority to reconsider [the defendant's] SVP designation under Crim. P. 35(b)."  *Id.* at ¶ 12.  Rejecting the State's arguments to the contrary, the division held that the defendant's motion challenging his SVP designation was cognizable under Crim. P. 35(c).  *Id.* at ¶¶ 14, 19.  After concluding that the motion was neither successive nor time barred, *id.* at ¶¶ 18 n.1, 37, the division remanded the case for the postconviction court to reconsider the defendant's SVP designation based on his argument about the relationship criterion, *id.* at ¶ 43.  Importantly, the division noted that the postconviction court "should reconsider [the defendant's] SVP designation based on the existing record."  *Id.*

10

¶ 17    *Baker* differs from *Mendoza*, and from the present case, in that the defendant there was not seeking to have the court consider a new SVP evaluation conducted under a revised screening instrument.  Rather, the defendant in *Baker* was challenging his *original* designation as an SVP.  There is thus nothing in *Baker* that runs contrary to or calls into doubt *Mendoza*'s holding that "[s]ection 16-11.7-103(4)(d) . . . does not . . . allow offenders designated as SVP's under past versions of the [screening instrument] to be reassessed under any revised versions." *Mendoza*, 313 P.3d at 644.

¶ 18    We therefore conclude that the postconviction court erred by granting Hudy's Rule 35(c) motion to remove his SVP designation.

### III.   Noncompliance with Appellate Rules

¶ 19    Finally, Hudy contends that the People's failure to comply with the appellate rules warrants dismissal of this appeal.  Specifically, the People's opening brief does not comply with (1) C.A.R. 28(a)(6), which requires a summary of the arguments; (2) C.A.R. 28(e), which requires references to the record; or (3) C.A.R. 28(f), which allows addendums to briefs only in limited circumstances not applicable here.  *See* C.A.R. 38(a) ("The appellate court may dismiss an

appeal . . . or impose other sanctions it deems appropriate . . . for the failure to comply with . . . these appellate rules . . . ."); *Bruce v. City of Colorado Springs*, 252 P.3d 30, 32 (Colo. App. 2010) (recognizing that dismissing an appeal may be an appropriate sanction for failure to comply with C.A.R. 28).

¶ 20 While we decline to dismiss the appeal, we caution the People that, in the future, failure to comply with C.A.R. 28 or other applicable appellate rules may result in striking the noncomplying brief or other appropriate sanctions, including dismissal.

### IV. Disposition

¶ 21 The order is reversed.

JUDGE J. JONES and JUDGE BROWN concur.